J-S48011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.J.N. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.J.N. | : | No. 602 MDA 2017 |

Appeal from the Decree March 7, 2017
In the Court of Common Pleas of Berks County
Orphans' Court at No(s):  85027

BEFORE:   OTT, STABILE, and PLATT[*], JJ.

MEMORANDUM BY OTT, J.:                          **FILED AUGUST 21, 2017**

G.J.N. ("Father") appeals from the decree entered March 7, 2017, in the Court of Common Pleas of Berks County, which involuntarily terminated his parental rights to his minor daughter, R.J.N. ("Child"), born in December 2015.[1]  Additionally, Father's counsel has filed a motion to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  Upon review, we grant counsel's motion to withdraw and affirm the decree.

The record reveals that Berks County Children and Youth Services ("CYS") filed a dependency petition with respect to Child on January 26,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered a separate decree that same day, confirming the consent of D.C. ("Mother") and terminating her parental rights.  Mother did not file a brief in connection with this appeal, nor did she file her own separate appeal.

2016.  *See* Exhibit No. 3 (Dependency Petition).  In its petition, CYS averred that it has been involved with Mother since January 2005, due to her history of unstable housing, lacking basic needs, inappropriate parenting skills, and unstable mental health, among other things.  *Id.*  At the time of Child's birth, Mother informed CYS that she planned to reside with her friend, A.M., and to raise Child with her assistance.  *Id.*  However, on December 24, 2015, A.M. reported that Mother had "taken off and does not want anything to do with Child anymore."  *Id.*  With respect to Father, CYS averred that he has had several Protection From Abuse ("PFA") orders entered against him since 1997, and that he should not have unsupervised contact with Child.  *Id.*  In addition, CYS was not certain that Father was actually Child's biological father.[2]  *Id.*  Child was adjudicated dependent by order dated February 17, 2016.  *See* Exhibit No. 4 (Order of Adjudication and Disposition, dated 2/17/2016).

On September 12, 2016, CYS filed a petition to involuntarily terminate Father's parental rights to Child.  The orphans' court conducted a termination hearing on March 6, 2017, during which the court heard the testimony of Father, who was called by CYS on cross-examination, and the testimony of CYS adoption caseworker, Sara Sweitzer.  Following the hearing, on March 7, 2017, the court entered a decree terminating Father's

---

[2] Father's paternity of Child later was confirmed through genetic testing in March 2016.  *See* Exhibit No. 1 (DNA Test Report).

- 2 -

parental rights. Father timely filed a notice of appeal on April 4, 2017, along with a concise statement of errors complained of on appeal. On May 26, 2017, Father's counsel filed in this Court a motion to withdraw and *Anders* brief.

Before reaching the merits of Father's appeal, we first must address counsel's motion to withdraw. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). "In *In re V.E.*, 417 Pa.Super. 68, 611 A.2d 1267 (1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights." *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy

- 3 -

of the letter sent to their client advising him or her of their rights."

***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, counsel filed a motion to withdraw, certifying that she has reviewed the case and determined that Father's appeal is frivolous. Counsel attached to her motion to withdraw a copy of her letter to Father, advising him that he may obtain new counsel or raise additional issues *pro se*. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Father, and counsel's assessment of why those issues are meritless, accompanied by citations to the record and relevant legal authority.[3] Accordingly, counsel has complied with the requirements of ***Anders*** and ***Santiago***. We therefore

---

[3] Counsel's letter to Father indicates that she is enclosing a copy of her ***Anders*** brief.

may proceed to review the issues outlined in the **Anders** brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief raises the following issues for our review.

1. Did the [orphans' c]ourt err by terminating [Father's] parental rights because [CYS] did not establish by clear and convincing evidence that [Father's] parental rights should be terminated pursuant to [the] Pennsylvania Adoption Act, 23 Pa.C.S.A. §[]2511(a)(1)?

2. Did the [orphans' c]ourt err by terminating [Father's] parental rights by failing to consider Father's presentation of evidence that []he had remedied conditions leading to h[is] child's placement based on grounds for involuntarily termination set forth 23 Pa.C.S.A. §[]2511(a)(2)?

**Anders** brief at 4 (suggested answers omitted).

We address these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 5 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> ***

- 6 -

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to

- 7 -

perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the orphans' court found that CYS presented clear and convincing evidence in support of its petition to involuntarily terminate Father's parental rights. Orphans' Court Opinion, 4/18/2017, at 8. The court emphasized that Father has "never been there for his daughter." *Id.* The court further emphasized that Father committed a crime during Child's dependency, resulting in his incarceration at the time of the termination hearing. *Id.*

Father argues that Child was placed in foster care not because of him, but due primarily to Mother's prior history with CYS. *Anders* brief at 13-14, 16. Father contends that he attempted to comply with reunification services, but that he was prevented from doing so because his car broke down, he lost his phone, his mother was sick, and he needed to find a job. *Id.* at 13, 16-17. Father further argues that he participated in various programs while incarcerated, and that he will be able to care for Child upon his release. *Id.* at 13-14, 19. Finally, Father contends that the court erred by failing to consider reunification efforts that were commenced by him following the filing of the termination petition. *Id.* at 18-19.

Our review of the record supports the findings of the orphans' court. As detailed above, Child was adjudicated dependent by order dated February 17, 2016. *See* Exhibit No. 4 (Order of Adjudication and Disposition, dated 2/17/2016). Following Child's adjudication of dependency, Father failed to

- 8 -

comply with court-ordered services. Father was referred for mental health, domestic violence, and drug and alcohol evaluations, but did not attend. *See* Exhibit No. 6 (Master's Recommendation – Permanency Review, dated 7/26/2016). Father did not submit to drug testing, did not participate consistently in casework sessions, and did not participate in parenting education. *Id.* Father did not report employment or income, and failed to maintain stable housing. *Id.* Father also was offered visits with Child twice per week. *Id.* However, Father attended only three of these visits, on April 15, 2016, April 18, 2016, and April 29, 2016. *Id.*

During the termination hearing, Father's testimony was defiant and combative, and he blamed CYS for "interfering into my business." N.T., 3/6/2017, at 16. Father also gave varying explanations for his failure to attend all but three of his visits with Child. Father initially testified, "I tried to attend, but I lost my phone, it's like I tried calling from other people and I guess no one knew the number and that was it." *Id.* at 15. Father later testified that he cancelled some of his visits with Child, "because things came up. Okay, this came up, you got to wait. I got to go." *Id.* at 17. Father testified that one of the visits he missed was due to visiting his mother in the hospital. *Id.* at 18. Finally, Father testified that he failed to attend visits because "[m]y PO was on my butt about getting a job and a place." *Id.* at 24.

In addition, following his failure to participate in services and attend visitation, Father was incarcerated on July 22, 2016. *See* Exhibit No. 7

(Hearing Officer's Recommendation – Permanency Review, dated 12/20/2016). Father testified that he was incarcerated due to a charge of receiving stolen property. N.T., 3/6/2017, at 12. Father claimed that he did not actually commit this offense, but that "since I had a record, I didn't fight it. I took a plea bargain." *Id.* Father testified that he would be released from incarceration on April 20, 2017, and that he planned to live with his sister and work at a restaurant in order to get back on his feet. *Id.* at 22.

Notably, the record reveals that Father's incarceration was not an isolated incident. CYS prepared an exhibit detailing Father's criminal history, which the orphans' court admitted into evidence as Exhibit No. 9. Exhibit No. 9 is two hundred and forty-five pages long, and consists of criminal informations, complaints, dockets, and sentencing orders, among other things, dating back to 1988. Father acknowledged that he has been incarcerated on numerous occasions, but claimed that most of his incarcerations were due to "parking tickets, which everybody gets parking tickets." N.T., 3/6/2017, at 11. When asked about his more serious charges, including theft offenses, Father explained that he was young and "going through depression." *Id.* at 10-11.

In light of this evidence, it is clear that Father is incapable of parenting Child, and that Father cannot, or will not, remedy his parental incapacity. Father's lack of effort in attempting to achieve reunification with Child, his frequent incarcerations, and his defiant attitude, confirm that he will not summon the ability to care for Child at any point in the foreseeable future.

Child's life should not be put on hold any longer. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).[4]

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has

---

[4] During the termination hearing, the orphans' court indicated that it would not consider any reunification efforts commenced by Father in 2017, because Father would by then have received notice of the September 12, 2016 termination petition. N.T., 3/6/2017, at 19-20. The court declined to admit into evidence a certificate indicating that Father completed a parenting class in February 2017. *Id.* at 27. We agree with Father that any reunification efforts commenced by him after receiving notice of the termination petition were admissible with respect to Section 2511(a)(2), as the prohibition against considering such efforts applies only to Sections 2511(a)(1), (6), and (8). *See* 23 Pa.C.S.A. § 2511(b) ("With respect to any petition **filed pursuant to subsection (a)(1), (6) or (8)**, the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.") (emphasis added). Nonetheless, because the evidence supporting the termination of Father's parental rights in this case was utterly overwhelming, we conclude that any error on the part of the court was harmless. *See In re Bosley*, 26 A.3d 1104, 1114-15 (Pa. Super. 2011) (observing that error is harmless when the party suffers no prejudice).

explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and

citations omitted).

Here, the orphans' court concluded that terminating Father's parental

rights will serve the best interests of Child. N.T., 3/6/2017, at 9. The court

found that Child has lived with her foster parents for nearly her entire life,

and that she has not seen Father since April 2016. *Id.* at 8-9. The court

further found that Child is bonded with her foster parents, and has no bond

with Father. *Id.*

Father argues that terminating his parental rights will be contrary to

Child's best interests, because children should live with blood relatives rather

than foster parents, and because Child's foster parents "have issues."

*Anders* brief at 20.

Our review of the record again supports the findings of the orphans' court. During the termination hearing, CYS adoption caseworker, Sara Sweitzer, testified that Child is doing "extremely well" in her foster home and is bonded with her foster parents. N.T., 3/6/2017, at 28. Ms. Sweitzer confirmed that Child has lived with her foster family since she was two months old and that Child has not seen Father since she was approximately five months old. *Id.* at 30. Child does not ask about Father, and Ms. Sweitzer did not believe that Child knows who Father is. *Id.* Further, she did not believe that Child would suffer any emotional distress if Father's parental rights were terminated. *Id.* Thus, we discern no abuse of discretion.

Accordingly, our independent review of Father's issues demonstrates that they do not entitle him to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. *See Flowers*, 113 A.3d at 1250. We therefore grant counsel's motion to withdraw, and we affirm the decree entered March 7, 2017.[5]

_____

[5] We observe that Child's guardian *ad litem* ("GAL"), Brian S. Forsyth, Esquire, filed an appellee brief in support of the termination decree. We are cognizant of our Supreme Court's recent decision in *In Re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), in which the Court held that trial courts must appoint counsel to represent the legal interests of any child involved in a contested involuntarily termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a). The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. *Id.* at 174. Importantly, the Justices disagreed on
*(Footnote Continued Next Page)*

Decree affirmed. Motion to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2017

_(Footnote Continued)_ ───────────────

whether the role of counsel may be filled by a child's dependency GAL. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by his or her dependency GAL. **_Id._** at 180-82. However, the Court's remaining four Justices disagreed with that portion of the lead opinion, and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. **_Id._** at 183-93. We note that, in this case, Father did not make any effort to challenge Attorney Forsyth's representation of Child during the termination proceedings, and that our review of the record does not reveal any conflict between Child's legal interests and best interests. Indeed, Child was only a year old at the time of the termination hearing, and it is clear that she was too young to articulate her preference regarding the involuntary termination of Father's parental rights.